Commonwealth *v.* Springer, Appellant.

Argued June 8, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Justin K. McCarthy,* with him *Daniel L. McCarthy,* for appellant.

*Russell Kowalyshyn,* Assistant District Attorney, with him *Edward G. Ruyak,* District Attorney, for appellee.

OPINION BY GUNTHER, J., September 16, 1959:

This appeal involves the application and construction of the Act of 1909, May 13, P. L. 520, as amended, 31 P. S. section 1 et seq., known as the General Food Law. Appellant, Ralph Springer, proprietor of a grocery store at 402 Linden Street in the City of Bethlehem, Pennsylvania, was convicted of violating the General Food Law in that he did offer or expose for sale or have in his possession with intent to sell certain food articles which were adulterated by containing filth, live beetles, maggots, moths and webs. Under the provision of section 7 of said Act, the indictment recited that defendant was twice previously convicted and sentenced in summary proceedings for violation of the Act.

On September 30, 1957, an inspector of the Bureau of Foods and Chemistry of the Department of Agriculture entered appellant's store and informed him he was making a routine inspection. In the course of his inspection he took into his possession eight samples or specimens consisting of a box of Luden's rainbow strips, a box of Pearson's salted nut rolls, a carton of ry-krisp, a carton of brazil nuts, a carton of chocolate covered mint thins, two large Hershey almond chocolate bars, a carton of Stauffers cookies and a carton of peanut

brittle. He saw evidence of infestation on these articles and was able to see that some of the articles were eaten and webby. These articles were tagged and delivered on October 2, 1957, to Edward W. Rees, a State chemist in Philadelphia, for examination and analysis.

The results of the examination and analysis disclosed that the rainbow strip candy had live beetles running around outside the candy in the box in the adult stage reached after 30 days; the cellophane-wrapped nut rolls were webby and the inside of box was full of live maggots squirming all around the box and on the outside of the rolls plus a fine webbing and eggs. The maggots or larvae were in the secondary stage and the eggs were in the first stage. The ry-krisp were found to contain 50 live beetles and 35 live maggots in 8 ounces of samples examined showing the beetles in the adult stage and the maggots in the secondary stage. The carton containing the brazil nuts were infested with live moths and beetles in the adult stage and the contents were dried out, indicating a very old product. The chocolate covered mints contained a lot of webs in the box and around the candy and also contained beetles. It was testified to that the white webby material was pupa hatching out into the adult beetle, leaving the web. The Hershey chocolate almond bars were entirely infested with live beetles and webs found inside the inner wrapper next to the chocolate. The candy itself was so infested with beetles it looked very old and grayish, like the cacao fat had come to the top of the chocolate bar. The carton of cookies contained beetles and live maggots and webs in the box and around the cookies, and the peanut brittle was entirely infested with moths and webs. The chemist concluded that these articles were unfit for human consumption.

All of the above enumerated articles, with the exception of the ry-krisp, cookies and brazil nuts, were taken from under the bottom shelf in back of the counter, from the top of an electric show case which was refrigerated inside, and from the rack just forward of the counter area where other items of food were displayed. The ry-krisp, cookies and brazil nuts were displayed in such a position as to be plainly visible to anyone entering the main portion of the store.

The jury returned with a verdict of guilty. Motions for a new trial and in arrest of judgment were denied and the defendant was sentenced to pay a fine of $500.00 and costs and imprisonment in the Northampton County Prison for a period of six months. From the refusal to grant the motions in arrest of judgment and for a new trial, this appeal was taken.

Appellant urges that the mere possession of vermin infested cartons of food is not sufficient to sustain a conviction of violation of the General Food Law. Specifically, he contends that the term "adulteration" as used in the Act is used in a particular sense of combining of a forbidden substance with an article of food to be sold to the public, and that he did not add anything knowingly to the contents of the packages which were manufactured by outside concerns.

Section 3 of the General Food Law provides, *inter alia,* that "an article of food shall be deemed to be adulterated,—Sixth. If it consists of, or is manufactured in whole or in part from, a diseased, contaminated, filthy, or decomposed substance, either animal or vegetable; or an animal or vegetable substance produced, stored, transported, exposed, or kept in a way or manner that might tend to render the article diseased, contaminated, or unwholesome; or if it is any part of the product of a diseased animal, or the product of an animal that has died otherwise than by slaughter."

Section (b) of the same subdivision provides that "It shall be unlawful for any person manufacturing articles of food or selling articles of food, whether at wholesale or retail, to have in his possession or to transport any article of food which is adulterated, unless the same has been completely denatured and rendered unfit for food by kerosene or other suitable denaturant prescribed by the Department of Agriculture."

Section 1 of said Act provides that "It shall be unlawful for any person . . . to sell, offer for sale, expose for sale, or have in possession with intent to sell, any article of food which is adulterated . . . within the meaning of this act.

"The possession of any adulterated . . . article of food shall be deemed prima facie evidence of an intent to sell such article of food."

It is at once apparent that the Legislature did not intend to limit the definition of "adulteration" to the combining of a forbidden substance with an article of food but specifically provided that the term "adulteration" shall include the keeping of food in a manner that might tend to render the article contaminated or unwholesome. Appellant relies on the case of *Commonwealth v. DiMeglio*, 385 Pa. 119, 122 A. 2d 77, as authority for the proposition that adulteration must be tested in terms of whether the food has been mixed or colored or anything added. However, an examination of that case clearly discloses that the Supreme Court was dealing with subdivision four of section 3 which provided that an article of food shall be deemed adulterated "If it be mixed, colored or changed in color . . . whereby damage or inferiority is concealed, or so as to deceive or mislead the purchaser; or if by any means, it is made to appear better or of greater value than it is." In that case, the question arose

whether the addition of a lemon pie filling for color was a violation of the Act. Under subsection 6 of the Act, the offense is the keeping of food in such a manner as to render the article contaminated or unwholesome and the term "adulteration" is broadened. There is no doubt in our minds that infestation of food articles with beetles, larvae, maggots and moths render such food contaminated and unwholesome. We have likewise examined the case of *Commonwealth v. Bates*, 47 Pa. D. & C. 240 and the case of *Commonwealth v. Ferry*, 21 District Reports 541, but do not find these decisions applicable to the facts of the instant case.

There was evidence introduced that appellant's establishment was dirty, untidy and containing a lot of flies. From this evidence the jury could well conclude that the infestation of the food articles was caused by the manner of keeping and storing. There was also evidence introduced by the chemist to the effect that the beetles were adults of the species, probably thirty days old and near the end of their life cycle. It is argued that all these vermin probably were shipped in the articles of food themselves and became contaminated in the manufacturing stage, although in the inactive stage. However, it is noteworthy to point out that in most instances the vermin were outside of the packaged goods and not in the food items themselves. It is also significant that appellant was twice before convicted and sentenced in summary proceedings for violations of the General Food Law. If, as appellant contends, the infesting vermin were shipped in by the manufacturer or the wholesaler, the condition would be prevalent generally on these items of food. There is nothing to indicate that such was the situation.

Finally, appellant contends that there is no evidence to show that he exposed these food articles for

sale. On the contrary, he testified that these items were stored for return and credit. Furthermore, when the inspector offered to pay for the items taken, he refused to accept money for them. The question of appellant's intentions was clearly an issue of fact for the jury and, having resolved that fact against him, appellant cannot be heard to complain.

The court below conducted the trial fairly and the appellant was properly convicted. The judgment of sentence is affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time this appeal was made a supersedeas.